This is Judge Stewart, and along with the panel, Judge Dennis and Judge Haynes, by our score sheet, Mr. Weldon will be up first, saving some rebuttal time, and Mr. Hawkins will come up as amicus after him, and then we'll shift to the DOJ with Ms. Faroo and then Mr. Riley. That's the order battle that we have. So, having said that, Mr. Weldon, you're up, sir. Good morning, Your Honor. May it please this court. UDF Realty is not binding on this court for three reasons. First, it was contrary to Supreme Court precedent at the time it was decided. Second, subsequent cases have shown that it applied the wrong constitutional provisions, as well as the wrong test in that case. And finally, 16 years since it was decided, it has not served as precedent in a single binding case in this circuit. Now, the court has jurisdiction to hear these claims today. Appellants lost on all of our claims below received none of the relief requested. District Court entered a final judgment to that effect. The confusion regarding jurisdiction in this case arises because the government insists that the only remedy available to appellants in the APA was a remedy that we did not see, vacature and remand of an agency action. But 706 of the APA is clear that the District Court also had jurisdiction to hold unlawful and set aside agency conclusions and findings that are contrary to the Constitution. And that's precisely what appellants challenged below. We challenged the agency's conclusion that it had to regulate the harvest. That conclusion was at work of the negative 90-day finding. But unlike that negative 90-day finding, that conclusion was not vacated or remanded to the District Court. To the contrary, the District Court, sorry, demanded to the agency. To the contrary, the District Court entered a final judgment agreeing with the agency's conclusion. Holding as a matter of law, the agency does have authority to regulate the harvest. As a result, my clients continue to be subject to federal regulation and continue to suffer daily injury. That's sufficient for Article III standings both at the District Court and on appeal. Now, the merits issue in this case is actually quite narrow. It comes down to what framework this court must apply under the substantial effects test to determine whether or not the regulation of the harvest is essential to some broader regulation of interstate commerce. Now, the parties disagree in various ways about that framework, and we disagree even on where that framework comes from. But the fundamental disagreement is this. Appellants contend, and the case law requires, that that analysis must be record-based. There must be some looking to the record to determine whether or not the harvestmen are interconnected in some way such that failure to regulate them would undercut the federal government's ability to regulate interstate commerce. And that fact-based predicate is essential, because without it, there is simply no limiting principle that would prevent the interconnectedness of species theory that was applied in GDF Realty from swallowing both Lopez and Morrison. The schoolchildren in Lopez and the domestic violence victims in Morrison were certainly part of the web of interconnected species, but that alone was not sufficient to bring them under federal regulation under the Commerce Clause. Instead, the court looked to the actual evidence in the record in those cases for evidence of actual interconnectedness, and that's what we don't have here. If you look at the record in this case, there's simply no evidence that the regulation of the harvestmen is essential to the regulation of any other species, much less regulation of interstate commerce. Indeed, after motions for summary judgment were filed in this case, there was a six-month remand to the agency, where the agency had an opportunity to supplement the record, and yet after six months, it could not produce a single piece of competent evidence as to interconnectedness. The only evidence that is relied on here was a letter by a biologist who conceded at the beginning of his letter that he was not to provide testimony on this, and you can see that's addressed at 43 through 46 of our brief. You can also find that at 42, 48 of the record. I'll give you just one example of the so-called evidence relied on there to give you an example of why that's not sufficient for regulation under the Commerce Clause. One of the reasons that they said the regulation of harvestmen was necessary was because San Antonio has a water preservation program. Well, San Antonio is not in the and the city of San Antonio's decision to adopt that water preservation program had nothing to do with the harvestmen or other endangered species. Nothing, if the federal government cannot regulate the harvestmen, it would have zero effect on cities like San Antonio's authority to create water preservation programs. So there's simply no evidence in the record to justify this interconnectedness approach. In fact, I would ask this court, if you can ask one question to the other side today, ask them to articulate a limiting principle that would prevent the interconnectedness of species theory from completely swallowing Lopez and Morrison if it's not a meager factual showing in the record. Now, I'd like to make one other point with regard to Rule 24 intervention in this case. The district court was well within its discretion to grant rate Rule 24 intervention in this case. We shared common questions of law as the lawfulness of the species. We shared common questions of facts because it's an APA case and we share the same administrative record, which we rely on for things like the range of the species. We also rely on these for interconnectedness of species. And therefore, the court was well within its discretion to grant Rule 24 intervention. But even if that were not the case, it will be harmless error here because my clients have independent Article 3 standing to bring these claims. If intervention had been denied five years ago, my clients would have filed the exact same claim in the exact same district court and we'd be in the exact same case today with the exact same party because plaintiffs are no longer in this case. It has to be remembered that Rule 24 is a rule about preserving judicial resources. The jurisdiction in this case and the So to remand at this point, I'm sorry, to dismiss at this point on appeal after summary judgment would be a gross abuse of judicial resources. And in fact, the government doesn't cite a single case in its briefing for parties with independent Article 3 standing went all the way through the motion for summary judgment process and then were dismissed on appeal due to Rule 24 intervention. And with that, Your Honor, I'll make one more one more point on the merits was raised in the brief. I have a little bit of time. I was made about the fact that we we talk about Justice Scalia's concurrence and rates. But you don't even have to reach Justice Scalia's concurrence and rates to reach our opinion. The majority opinion in rates did two things. First, it made clear that applying the necessary and proper call. You can look at page five and page 22 of the majority, which, in fact, that was the question presented in the case with the necessary and proper call. Second, majority opinion in rates applied a fact based approach and a record based approach to analyze the claims in that case. Indeed, the majority opinion in rates makes clear that that's how they distinguish that case from Lopez and Morrison. The court looked to the robust congressional record that the regulation of intrastate marijuana was essential to the regulation of interstate marijuana. And if you look at note 20 in the majority opinion, he lay out the robust congressional findings on that point. We don't even have to get to Scalia's opinion in rates to get where we're at. But again, this court has already adopted, even if we did have to, the court's already adopted Scalia's approach. With that, um, if I may, I'd like to reserve anything that I have left for rebuttal and then pass on to me. All right. Well, you have you you've saved three minutes for rebuttal. So, you know, it's on you. I mean, you're not going to have but three minutes on rebuttal. So this is your time if you want to use it. But if you're you're you know, you're done. So I tell you what to do. I just want you, you know, yes, you're good. You feel like you get your honor. I've made the point that I wanted. Okay. Thank you. All right. Point well taken. Thank you, sir. All right. Mr Hawkins is the amicus. Thank you, Judge Stewart. May it please the court. The state would like to offer two points today. First, under existing Supreme Court precedent, particularly NFIB versus Sebelius, the federal government lacks the authority to regulate activity related to deharvestment because such activity does not substantially affect interstate commerce. It is the state's prerogative, not the federal government's, to regulate intrastate species that have no impact at all on interstate commerce. Second, the rule of orderliness does not require this panel to adhere to the 2003 panel decision in GDF Realty because that decision has been abrogated by subsequent Supreme Court authority. I'll start with the existing Supreme Court precedent. In NFIB versus Sebelius, the Chief Justice and four of his colleagues held that the Commerce Clause does not justify the Affordable Care Act's individual mandate. In reaching that holding, the court rejected the same type of argument that the federal government is advancing in this case. The federal government's theory in that case was that the insurance marketplace was this massive web of interconnected interstate commerce. And in order to better regulate that massive web, the federal government needed the part of that web to keep them in the web and also those who were not. Now, five justices in NFIB rejected that position, and the key portion set out in Part 3A of the Chief Justice's opinion. The takeaway is that simply evoking an ecosystem is not sufficient to confer broad regulatory power on the federal government to regulate anything that might impact that web. That was true in NFIB, where the ecosystem was a web of insurance transactions, and that's also true here, where the federal government's theory is that a web of interconnected species means that it can regulate any individual species in that ecosystem on the theory that the broader ecosystem impacts interstate commerce. Now, the federal government in NFIB also argued that it needed to keep people in the insurance market to better regulate that insurance market. Their argument here is functionally the same. They want to be able to protect the harvestment not because it impacts commerce, but because they want to keep it in this ecosystem of many species to better regulate that ecosystem, which in turn down the line impacts commerce. It's just like saying, as the federal government did in NFIB, that it needs to keep people in the insurance market to better regulate that market, and that argument failed in 2012. One final point about NFIB, at page 560, the chief justice underscores the principle that when in doubt, federal courts are to interpret the commerce power narrowly rather than broadly. The reason is that the federal government is one of limited and enumerated powers. As a result, courts are to reject expansive readings of federal power. Now, when we read NFIB against Raich, we see that the federal government can regulate harvestment takes only if there's a rational basis to conclude that leaving the harvestment outside the regulatory environment will have a substantial impact on interstate commerce. That's page 19 of Raich. The federal government has made no such showing here for the reasons that Mr. Weldon outlined a moment ago and set out in more detail at pages 43 through 46 of the appellant's reply brief. With that, I'd like to move briefly to my second point. The rule of orderliness does not require adherence to GDF Realty. The most recent statement of the rule of orderliness is the 2018 decision in Gahagan. Gahagan indicates that this panel doesn't need to adhere to GDF Realty because it's been abrogated by the Supreme Court. GDF Realty believed the federal government had the power to regulate ecosystems and everything that touches that ecosystem without asking about its impact on interstate commerce. We now know after NFIB that that conception of the law is not correct. What's the express abrogation? Articulate the express abrogation that you speak of. Well, Your Honor, the GDF Realty rule is that when the government points to an interrelated ecosystem, it can regulate parts of that ecosystem without asking whether those component parts impact interstate commerce. NFIB makes clear that that's not permissible. Just as the federal government doesn't have that type of power as to the insurance ecosystem, it similarly does not have the power as to an ecosystem of species presented here. All right. An extension of your NFIB argument. Okay. I thought you were referring otherwise or additionally to an abrogation either in another case or by other express language, but in this environmental sort of context as opposed to what you said. Okay. Your Honor, yes. If I may, NFIB, it doesn't involve a literal environmental context, of course, but it rejects the argument the GDF Realty Court relied on. Right. No, I understood your NFIB argument when you said that GDF had been expressly abrogated. I thought you were alluding to some other Supreme Court pronouncement in addition to that, and you were doing it in the context of your rule of orderliness argument and by citing Gahagan is the way I say it. I was just trying to pull from you if you were articulating an additional or supplemental case or case authority outside of NFIB to make that argument. That's all. Understood, Your Honor. I'll let the court ask further questions. All right. Thank you, Mr. Hawkins. All right. We hear from the government, Department of Justice, Ms. Farrell. Thank you, Your Honors, and may it please the court, Berucha Okumari for the United States. Your Honors, we think that on the merits, this is a straightforward case because this court is bound by its precedent in GDF Realty, but before getting into the binding nature of that precedent, we think it's important to spend some time on the threshold questions, but there are serious threshold problems with this appeal, and so if the court is amenable, I want to turn to jurisdiction intervention first for addressing the merits. And so as to jurisdiction, I think what's important to focus on here is that there was a single final agency action that was challenged and that gave rise to the case controversy below, and that action was the 2017 decision by the Fish and Wildlife Service to deny a petition for delisting. That decision has been vacated and set aside by the district court, and I should note that neither these plaintiffs nor the original plaintiffs challenged the original listing of the harvest men, which happened in 1988, because they couldn't. That would have been well outside the statute of limitations, and the court wouldn't have jurisdiction to consider that challenge, as this court recently said in the General Land Office decision. And so the only final agency action at issue here was the 2017 petition denial. So the vacature and the set-aside of that petition denial has a number of jurisdictional consequences. As we said in our brief, what it means is that the appeal is moot for both constitutional and prudential reasons. It also means that under the APA, there are no further remedies that can be given for this particular agency action, and I'll get to that in a moment. And finally, what it means is that because of the remand structure of this case, it means that the district court's judgment is effectively an interlocutory one that the court should adhere under the final judgment rule. Now, turning to mootness, we think it's constitutional and prudential. It's constitutional because there's no longer a case or controversy about the agency action at issue here. Now, I know the appellants argue that they still remain injured because the feces continues to be lifted. But that is trying, is basically severing the tie between injuries and remedies and causation. In order to have a remedy, the remedy has to be tied to the claim, not the other way around. Otherwise, by just simply looking at any get from the government at this point without tying it back to a final agency action, and they are bootstrapping in remedies, free-floating remedies, and essentially circumventing the six-year time bar by bringing on appeal a case of simply challenging the original list. They cannot. Moreover, in terms of looking at the final agency action, you know, they think, well, there's still effective relief that could be given. But simply because you can get effective relief, especially in terms of injunctive relief, doesn't mean that the case isn't moot. And I would point you to two cases for that. The Environmental Conservation Organization's case versus Dallas, we cite that in our brief. And there, the same argument was made that you can give additional equitable relief. And what this court said was you can always give equitable relief, but that's not a right, and that doesn't mean that the case is no longer moot. Additionally, the Supreme Court in the Church of Scientology versus United States case, that case had to do with mootness. And what the court there said is even if there's been a change in agency action, if you're looking at the question of how best to remedy any injury, you look to moving the parties back to the status quo ante before the action that was challenged. Here, they've gotten more than the status quo ante because not only are they in the same position as before the agency denied the petition, but the agency is now considering Mr. Yearwood's petition. The agency has now given a positive 90-day finding and moved the petition to the 12-month stage. And this is why there's potential mootness as well, because what the attorneys are asking this court to do is something that the agency may well itself do as a result of the petition process. And one more word on jurisdiction. The appellants also talk about the APA and how Section 7062 provides remedies. I would point the court to the quick decision in John Doe versus Veneman. And there, what the court said was the APA gives review over a decision, current decision. It doesn't allow the court to enjoin a future decision that hasn't yet been made, and it doesn't allow the court to make the agency's decision before it, but the court's review is narrow and to actually review the decision. So just like in that case here, because there's no longer a decision, there's no further remedies that could be provided in this context. But isn't there a decision by the district court overruling the constitutional challenges? That hasn't gone away. There is a decision by the district court on that issue. It asked to be, that issue was one of two arguments that were made in challenging the 2017 decision. And that decision, the agency's decision, has now been set aside. So while there is that, you know, there is that language in the court's opinion below, it didn't, it doesn't do anything in terms of the agency action. The agency action has still been set aside. And for example, if you, if the agency sees a remand process, if it determines that a delisting is warranted, then you no longer would have the decision. The other side says that there's no mootness because they're making a constitutional claim. I mean, they're saying, irrespective of what the agency has done or may do, that they're making a constitutional challenge to the agency's authority, period, to regulate. So their argument, if I understand it correctly, is that their constitutional attack isn't within the purview of the agency, what it does or doesn't. But on the, that's what I heard him saying. So what do you say? Right. Well, I think what this court said in the Dun & McCampbell case is in that case as well, you had the parties raising constitutional challenges. That doesn't, those constitutional challenges are still reviewed under the channeling process of the APA. And so if you're raising a constitutional challenge to the original listing, it would still be barred by the six-year time bar. That's what the court said in Dun & McCampbell. So I think that the APA scope of review would continue to govern. It doesn't make a difference if you're raising a constitutional question or not. If the underlying action that you launched those constitutional challenges against, if that action is gone, then the case is moot. I'd like to turn, unless there's any questions, more questions on jurisdiction, I'd like to turn to intervention because we believe that this is another alternative basis in which the court can dismiss the appeal. The appellants were improperly below. And the reason why this is important to the United States, it's not simply a technical error, but because only parties can carry the case forward on appeal. And the reason why it was improper below as a legal matter is because under rule 24B, permissive intervention, which is how they got into this case, requires as a legal matter that the plaintiff share a common question with the original plaintiff. And even now, even on appeal, they cannot identify the common question that was shared. And the common question requirement, what the Supreme Court said in the Walmart case, the common question requirement is more than simply saying we're challenging the same agency action. It has to be because a question the court has to consider, the fact finder would have to consider what the court said in Walmart is that resolving that question will enable the district court to then address and resolve the claims of both groups in one swoop. That's where you get the efficiency under rule 24B. That's why resolving the common question allows that efficiency. And here, we did not have that. Here, the original plaintiff raised a scientific question. They argue that the Harvestman is no longer endangered as a factual matter. The plaintiff intervenors argued that the service had no constitutional authority to regulate the species at all as a legal matter. The two questions that were raised completely diverged, and it did not result in the efficiencies. Now, I know that Mr. Weldon said that it would be efficient now for the court to hear this case, but the question is not whether it's efficient now that they're here. The question is whether under rule 24B, this would be an judicial rule, and this is a proper interpretation for the district court going forward. Mr. Weldon said rule 24 is a preserving judicial resources sort of inquiry, and his argument, if I understood him right, was that, you know, their Article III standing, as he argues, is rooted in, you know, the APA, et cetera. So the rule 24, while there, he said, doesn't drive this issue. It's a rule there. It's permissive. It's about preserving resources, et cetera, et cetera. At least that's the way I understood the argument. So help me understand what you're saying in response. Sure. So I think that rule 24 is not a standing argument, and we're not, when we challenge intervention, we're not arguing that they don't have standing, although clearly, as to whether they would, they are arguing harmless error, which, number one, is a new argument that they didn't make in their brief. But second of all, it's not clear that they would have been able to bring their own case. One important factor, what happened here with permissive intervention, they argued below that they didn't need standing, and that's true under the moving decision that we cite in our brief. If you're joining in a case that already has jurisdiction, you don't have to prove standing, and what that meant was here, nobody inquired as to their standing. It didn't matter, and they were not subjected to the normal gatekeeping requirements that you would have as a party coming to the case. It's not clear that they would have satisfied the imminent injury requirement. It's not clear that their claims wouldn't have been barred when you really parsed them and figured out what it was that they were challenging. And so I don't think that you can just say, well, they would have come in anyway, because if they had a case, then they should have brought their own case, and there are multiple ways that the district court could handle its docket using consolidation and other tactics but intervention means that you don't have to show your standing below, and as a United States, you know, as a frequent defendant in cases where many parties are often interested in the case, it's a problematic rule, a problematic interpretation of Rule 24 to allow parties to piggyback on the existing claim for this jurisdiction, but then to then transform the I'd like to now turn to the merits, unless there's any further questions. Let me just, one last question. What's our standard of review on that question? I mean, it was permissive intervention. What's our, what's our government, we determine standard of review, but what's our governing standard of review with respect to the intervention question? Yes, so typically intervention is reviewed for abuse of discretion, but what this court said in Newby versus Enron is that the question of whether there's a common question of law or fact is a threshold legal question that is reviewed de novo, and of course, if the district court makes a legal error, then that is automatically an abuse of discretion. If I may turn to the merits briefly, you know, again, we think that the court's decision, if you reach the merits and your path is clear, this court is bound by the panel's previous decision in GDF Realty. There is simply, the only question is whether or not GDF Realty has been overturned by any intervening precedent, and the answer is clear. It absolutely has not been, and what the court said in the Alcantara is that when you're looking at whether we disturb the rule of orderliness, it's not sufficient that there might be a hint, and here there's not even a hint, that any binding precedent has overturned GDF Realty. Well, counsel opposite and Mr. Hawkins Argonne, GDF Realty hasn't been followed. It's there, but more to the point is I was in the heart of the Affordable Care case, the Chief Justice majority, five justices. He says the controlling principle in that case, in the opinion, is what drives the matter of GDF implicitly or having been supervened, shall we say, the analysis. It's not an environmental case, but he said, and I asked him again, that that principle in the Affordable Care Act, in the Chief's opinion, is what drives the decision here, that the analysis in GDF is what's up. What do you say? No, the decision in NFIB did not in any way undermine the comprehensive scheme principle that the Supreme Court articulated in Reich and what this court held in GDF Realty, and I would also note that the Fifth Circuit post-NFIB in the Markle decision applied GDF Realty again as persuasive authority. It was vacated, but I think it remains persuasive. NFIB is simply not applicable here. What the court said there was in saying that the Affordable Care Act and the individual mandate, but that wasn't satisfied under the Commerce Clause, it made a distinction between activity and activity. What it said was Congress cannot create activity. It cannot force people to enter into commerce. That's not what's happening here. Indeed, the ESA is like any other traditional regulation of commercial activity. It prohibits the activity in terms of prohibiting take, just like in Reich where you prohibited people from professing and growing marijuana. I see that my time has elapsed, so we would ask the court, if you can still hear me, we would ask that the court dismiss the appeal for lack of jurisdiction and for improper grant of intervention. If you reach the merits, we think that the panel's decision is clearly bound by GDF Realty and the reasoning therein. All right. Thank you. Any questions from the panel? All right. Mr. Rylander, you're on. Good morning, and may it please the court. My name is Jason Rylander, and I represent the Center for Biological Diversity, the Defenders of Wildlife, and Travis Audubon. Under the rule of orderliness, this court is bound to uphold prior decisions unless the Supreme Court or an en banc panel of this court squarely rejects the precedent. GDF Realty considered this exact same issue in a case involving the very same species, and it remains binding on this court because no precedent of the Supreme Court, this court, or any other court has undermined the holding of GDF Realty. In fact, quite the opposite. Since GDF Realty was decided, three other circuits, the 9th, the 10th, and the 11th, joined the 4th and the DC circuits in upholding the constitutionality of the ESA. And all three of those cases cited GDF Realty approvingly. A total of six circuits in eight separate cases has now upheld the ESA against similar challenges. In addition, this court recently reaffirmed the holding of GDF Realty in Markle. And while the Supreme Court ultimately reversed Markle on other grounds, it did not take up or disturb Markle's holding that the ESA was constitutional. In fact, the Supreme Court has rejected every certiorari in every ESA Commerce Clause case that has come before it. But even if we were to revisit this question afresh and ignore GDF Realty, which we cannot do, Gonzales-Zureich and NFIB versus Sibelius do not compel a different result. Although Gonzales-Zureich addressed a very statute, the personal cultivation of marijuana under the Controlled Substances Act, it essentially adopted the rationale of this court in GDF Realty. First, the majority reaffirmed the rational basis test that was espoused in Lopez and Morrison, noting that the court's task in such cases is a modest one. Courts, quote, need not determine whether activities taken in the aggregate substantially affect interstate commerce, in fact, but only whether a rational base exists for so concluding. The majority did not separately analyze the issue under the Necessary and Proper Clause, but even if you do so, using Justice Scalia's concurrence as a guide, it only helps our side of the case. Justice Scalia essentially took the same view as Judge Dennis's concurrences in GDF Realty, which recognized that Congress has the authority under the Constitution, quote, through the intersection of the Commerce Clause and the standing alone. That comprehensive scheme principle is well established in the law, and the ESA's regulatory program would be severely undercut if it could not reach the nearly 70% of listed species that can be found only in a single state. Indeed, every case since Reich has used this comprehensive scheme principle to turn back attacks on the ESA. That includes Petco and Texas, Alabama, and obviously the 11th Circuit, San Luis and Delta in the 9th Circuit, and Markle here in the 5th. But as Judge Echol noted, the Sebelius majority, that holding, sorry, as Judge Echol noted, the decision in Sebelius also does not change the analysis in any way because the majority in that case, to the extent that there was one, decided the case on a taxing power and under very different facts with no clear opinion on the Commerce Clause question. NFIB, as counsel for government indicated, came down to a very unique set of circumstances where the Affordable Care Act was compelling participation in a market, and that compulsion, the court found, was not essential to the overall purpose of the ACA. Even if you just look at Justice Scalia's opinion for four justices, that specifically cited endangered species protection as an example where Congress could appropriately regulate interstate activities as part of a comprehensive scheme. Justice Scalia cited Andrew C. Allard for that. So it's hard to read NFIB and conclude that GDF Realty has been in any way overturned to the extent that the case is analogous at all. I feel as though it supports our side of the case, or at least does not displace the holding in GDF Realty. And in fact, three circuits since NFIB versus Sebelius have so held, the 9th, the 10th, and again, the 5th here in Markle. Because of this, reliance on Whaley and St. Joseph's Abbey versus Castile are also in opposite. Neither one of those cases mentions GDF Realty, let alone abrogates the case. They deal with very, very different issues. St. Joseph's Abbey was a 14th Amendment case that did not even mention the Commerce Clause. In fact, it didn't rely on Lopez or the Necessary and Proper Clause. So if this court considers the merits and does not dismiss on jurisdictional grounds, it need only find that the ESA is an economic regulatory statute, as this circuit and every other circuit has found, that Congress protected all species as part of a comprehensive economic scheme to preserve biodiversity for current and future uses, which includes both the known and unknown values of species. That regulation of interstate species is essential to that scheme. And the courts have said that if the class of activities affects commerce, and it clearly does, then courts may not excise individual instances of that class. If you otherwise would leave as many as 70% of species on the list and reside in a single state without any protection. So to close, appellants are simply trying to reverse engineer their preferred policy outcome from snippets of opinions, mostly dissents and concurrences. I'm sorry, Mr. Reilander, I just want to ask about the last comment you made about the 70%. Yes. Would it necessarily be true that the 70% would be off the list, given that the agency is allowed to show that those species do have impact on interstate? So if you showed that an arachnid in Austin is helping the bats in Austin, which is then helping the bats in, you know, New Orleans, then that would support it. So it wouldn't necessarily be true that the 70% are wiped out, right? It depends on where you start the analysis. Congress could certainly include findings, as could the agency, and the court could have evidentiary hearings on each one of the nearly 1,200 species that might fall into that single state category. That would be, I think, incredibly problematic, because Congress is also concerned about the unknown uses of species that may or may not be visible on its face, or species that were traded to Congress previously that no longer are because of their scarcity. But to go strictly to the law, the courts have made clear that what is important is to look at the overall regulatory scheme, and Congress has rationally decided that in order to protect biodiversity and all of the intricacies thereof, it needed to protect both interstate and intrastate species. Appellants would like you to focus solely on the Bone Cave Harvestman. The Supreme Court has counseled in Raich and Morrison and Lopez that what you're looking at is the take prohibition as a whole, or the listing prohibition as a whole. Those prohibitions are rationally related to Congress' comprehensive scheme, and then to excise individual instances of that class that may or may not have specific evidence of impact to commerce is not this court's task. So for all of these reasons, the opinion of the district court and the reasoning of GDF, Realty, and Markel should be affirmed. If there are no further questions, I thank you for your time. All right. Back to you, Mr. Weldon, for rebuttal. I will be able to point to a limiting principle, if not a factual predicate in the record, that would prevent GDF's interconnectedness of species theory from swallowing both Lopez and Morrison. We are not attempting to excise one individual take and require an evidentiary showing for an individual take on John Yearwood's property. We are trying to excise the entire class of harassment take. We didn't arbitrarily carve out, as was the case in Raich, some purely interstate instance of an otherwise interstate activity. We drew the line exactly where the statute draws the line. The agency independently adopts regulations for each species. The structure of the Endangered Species Act draws that line for us. We're simply asking that there be some sort of factual predicate in the record. As to the jurisdictional questions here, we have independent Article 3 standing here under contender forms. That was actually brought up in the district court below. The district court agreed that we have independent Article 3 standing under contender forms because we're subject to the regulation, and we followed the appropriate procedures laid out by this court and done by petitioning to have that regulation rescinded and appealing the denial. 706 provides two separate forms of relief in this case. Again, it's a shall set aside agency conclusion that are contrary to the Constitution. That's in addition to the separate provision that says shall set aside agency action. Congress intended for both of those things to be in play, and the reason that it did is because Congress recognized that merely setting aside an action sometimes will not provide relief if you leave the conclusions in place. The most obvious example would be if you set aside, for example, a claim of jurisdiction over property when an agency enters a stopped work order. You could vacate the stopped work order, but the claim of jurisdiction over the property is an independent injury warranting appeal. Finally, with regard to the rule of orderliness, the rule of orderliness does not require that this court always follow panel opinion. It requires that this court follow panel opinions unless factors are present. It doesn't require, as opposing counsel noted, explicitly overruling a prior opinion. Implicitly calling into question the test, if you look at the Stokes case, if you look at the Hagen case, or the Thompson versus Dallas case, if the test is called into question, even the emphasis within the test, that can justify reconsidering a case under the rule of orderliness. The court also has to look at the fact that this is not acted as precedent at all except in the vacated opinion where the issues in this case were not even raised. The parties in Markle did not raise the issues in this case. They assumed the GDF was rightly decided, and they briefed it as such. And with that, Your Honor, that's all that I have. Thank you. All right. Thank you, counsel, for your briefing and your argument this morning, robust and helpful. We will consider the case submitted, and we will respond in a written opinion. Unless the panel has something further, this concludes the oral argument in this case. To all the counsels, stay safe and be healthy.